630 So.2d 1330 (1993)
STATE of Louisiana
v.
Alfred BERRY.
No. 92-KA-1346.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
*1332 Lane R. Trippe, Glass & Reed, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., Robyn C. Gulledge, Asst. Dist. Atty., New Orleans, for appellee.
Before CIACCIO, WARD and ARMSTRONG, JJ.
CIACCIO, Judge.
Defendant, Alfred Berry, was charged with three counts of aggravated rape in violation of R.S. 14:42 and three counts of armed robbery in violation of R.S. 14:64. The state severed count 3 (R.S. 14:42) and count 4 (R.S. 14:64) from counts 1, 2, 5 and 6. Defendant was tried on counts 1, 2, 5 and 6 and found not guilty on all four counts. As to counts 3 and 4, the defendant was tried and found guilty on count 4, armed robbery, but because the jury could not reach a verdict on count 3, a mistrial was declared. A second trial on count 3 again resulted in a mistrial when the jury could not reach a verdict. The State later nolle prosequied the charge. The trial court sentenced the defendant as to the armed robbery conviction to ninety-nine years without benefit of probation, parole or suspension of sentence. On appeal, defendant's counsel requested only that this court review the record for errors patent. That review revealed that the record did not show a ruling on the defendant's motion for a new trial prior to sentencing. Defendant's sentence was vacated and the matter remanded for resentencing; his conviction was affirmed. State v. Alfred Berry, 562 So.2d 60 (La.App. 4th Cir.1990). The trial court denied defendant's motion for a new trial and sentenced defendant to serve ninety-nine years at hard labor without the benefit of probation, parole, or suspension of sentence.
Defendant subsequently filed an application for post conviction relief in which he claimed that he was denied the effective assistance of counsel on appeal. After the trial court denied the application, the defendant filed a writ of review in this court. Pursuant to the decision in Lofton v. Whitley, 905 F.2d 885 (5th Cir.1990), we granted defendant an out of time appeal.
At trial the victim testified that on March 29, 1987, at 8:00 A.M. as she put her key in her apartment door at 1005 Barracks St., a black man grabbed her from behind, put a gun to her head, and forced his way into her apartment. He then took her into the bedroom, tied her hands and forced her to have sexual intercourse. Afterward, he tied the victim's feet and ankles and took her jewelry and money from her purse.
Detective Cindy Burkhardt of the NOPD Rape Investigative Unit testified that she arrived at the victim's apartment shortly after the rape. She obtained a description of the jewelry the victim was missing. Later, the detective took six pictures of suspects to the victim. The victim could not identify her assailant but she thought two pictures looked somewhat like him. One of the pictures she chose was of the defendant. Later the detective took a piece of jewelry, a "buttercup" diamond earring, to the victim. The earring had been pawned by the defendant. The victim identified the earring as one stolen from her on the morning of the rape.
Officer Kenneth Solis, a fingerprint expert for the New Orleans Police Department, testified that he found the defendant's fingerprints on a jewelry box in the victim's bedroom.
The sole defense witness was Faye Bullock, the defendant's sister. She testified regarding tattoos on the defendant's arm, chest, face and hand. The defendant displayed these tattoos to the jury but did not testify.

ERROR PATENT REVIEW
A review of the record reveals no errors patent, with the exception of the trial court's failure to rule on the motion for new trial prior to the original sentencing. State v. Berry, supra. This error was cured at resentencing when the trial court denied the motion and the defendant waived delays for sentencing.
Defendant's first eight assignments of error pertain to his sentence only and are *1333 condensed into four arguments. These are as follows:

ARGUMENT 1
In his first argument, the appellant contends that his sentence of ninety-nine years without the benefit of probation, parole, or suspension of sentence, the maximum possible sentence under R.S. 14:64, is unconstitutionally excessive.
Article I, Section 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Cann, 471 So.2d 701 (La.1985); State v. Sherman, 557 So.2d 997 (La.App. 4th Cir. 1990); State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). The imposition of a sentence, although within the statutory limit, may be unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). In order to insure adequate review by the appellate court, there must be an indication in the record that the trial court considered both the aggravating and mitigating factors set forth in C.Cr.P. art. 894.1 in determining the defendant's particular sentence. Sherman; Bell, supra.
In the instant matter, the trial court gave extensive reasons for its sentence. The court noted that the defendant had earlier been acquitted in the court of two counts each of aggravated rape and armed robbery; the court stated that those acquittals were "the gravest miscarriage of justice imaginable that I have witnessed" and that "the State proved their case beyond all doubt." The court further noted that in the trial which resulted in the armed robbery conviction, a mistrial was declared on the aggravated rape charge. The court again noted that the defendant had been fortunate. The court then reviewed the factors under C.Cr.P. art. 894.1:
Article 894.1 of the Code of Criminal Procedure, (sic) indicates those considerations which should be accorded weight in determining the length of sentence. Most important is the risk of commission of another crime by the defendant. In this case, it appears to be no risk, but rather a certainty. And I certainly take into consideration the fact that you have been in trouble with the law since you were 9 years old. Maybe society may be partly to be blamed or not. That's not my job. My job is to protect the society of today and tomorrow. And I do not feel that there is any rehabilitative treatment that can benefit you at all in my opinion. My main consideration, as I stated before, is to isolate you from the bulk of society and thereby reduce the harm that you are capable of inflicting upon it. You, sir, in my opinion are a walking crime wave. You are without prejudice in your crime. Your victims cover all race, color, and creeds and age. Other considerations certainly that I am taking into consideration now are the gravity of the offense of which you are convicted, the harm caused by your conduct, the certain lack of provocation, and although this is not specifically stated in the Code, your brutality and other ruthlessness inherent in the commission of this crime. The scars that you have placed upon the mind and heart of the victim in this particular case certainly can never be erased nor ever assuaged. I generally favor leniency with first offenders, as my record will indicate, and certainly, the sentence that I give today has only been done on rare occasions in this particular court. Considering all of the circumstances in this case any leniency whatsoever, even to the extent of deducting one year from the maximum sentence would be unjustified.
S.Tr. 27-28
The trial court clearly complied with C.Cr.P. art. 894.1 by considering mitigating and aggravating circumstances.
Once adequate compliance with art. 894.1 is found, the reviewing court must then look to the facts and sentences of other cases to determine whether the sentence imposed is too severe in light of the particular circumstances of the defendant's case, keeping in mind that the maximum sentences should be *1334 reserved for the most egregious violators of the offense so charged. Cann; Brogdon; Bell.
In cases found where the maximum sentence was affirmed, the defendant injured his victim during or after the robbery. In State v. Collins, 557 So.2d 269 (La.App. 4th Cir. 1990), the defendant was convicted of four counts of armed robbery in addition to one count of attempt armed robbery and two counts of aggravated battery. He was given the maximum sentences on each count, with two of the armed robbery counts and one of the battery counts to be served consecutively. We upheld these sentences, finding the length was warranted due to the brutal beatings the defendant administered to two elderly victims in a crime spree which occurred over several days.
In State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986), we upheld the defendants' consecutive ninety-nine year sentences on three counts of armed robbery. The defendants each had a history of criminal activity and had acted violently by terrorizing and injuring several of the victims of the armed robberies.
In State v. Isaac, 487 So.2d 565 (La.App. 4th Cir.1986), writ den. 530 So.2d 80 (1988), the defendant's ninety-nine year sentence was upheld where the defendant robbed his victims at gunpoint, shooting and wounding one victim. Likewise, in State v. Washington, 482 So.2d 118 (La.App. 4th Cir.1986), we upheld the maximum sentence on a defendant who robbed the victim at gunpoint and then sexually assaulted her.
In three cases we upheld maximum sentences for armed robbery where the defendants did not injure the victims but had extensive criminal histories. In State v. Johnson, 466 So.2d 741 (La.App. 4th Cir.), writ den. 469 So.2d 979 (1985), the defendant placed a gun to both of his victims' heads and demanded money. In light of his extensive record of prior arrests and convictions, this court upheld his ninety-nine-year sentence. In State v. Wilson, 452 So.2d 773 (La.App. 4th Cir.1984), we affirmed the maximum sentence where the defendant had an extensive arrest record and had prior misdemeanor convictions. The defendant had not injured the victim, but he had pointed a gun at the victim and had threatened to kill him if he did not turn over his jewelry and wallet. In State v. Roberson, 445 So.2d 12 (La.App. 4th Cir.1983), writ den. 449 So.2d 1344 (1984), the defendant entered an office at a country club, demanded money from an employee, forced eight employees into a walk-in-vault, closed the door behind them, and also took another employee's purse as they were leaving. We upheld the maximum sentence for the armed robbery conviction, noting the defendant's juvenile and adult criminal record indicating he was extremely dangerous.
In the present matter, the trial court referred to the defendant's criminal history back to the age of nine. The defendant had a juvenile record in addition to the various arrests for rape and robbery, some of which charges had resulted in acquittals. The victim in this case testified that she was raped, and the trial court took this testimony into account in sentencing the defendant. Given the defendant's history and the facts of the instant offense, the defendant's sentence is not constitutionally excessive.
Defendant additionally argues that the trial court should not have considered his arrests for charges for which he was acquitted or never tried. He further argues that the trial court should not have considered the testimony at the sentencing hearing which implicated the defendant in crimes for which he had never been arrested.
At the sentencing hearing, the State first introduced the testimony from the trial which resulted in the defendant's acquittals. This trial involved two victims; the defendant was charged with aggravated rape and armed robbery of each. The State then called Detective Lido Schaubhut of the New Orleans Police Department rape investigation section. He testified that the defendant had been arrested for eleven aggravated rapes, one attempted rape, seven armed robberies, three aggravated burglaries, two aggravated kidnappings, one simple kidnapping, three aggravated crimes against nature, and one aggravated battery. Detective Schaubhut described the victims, the areas wherein the crimes occurred, and the types of weapons *1335 involved. He described the evidence which caused the police to link the defendant to these myriad crimes. This evidence consisted of stolen jewelry pawned by the defendant, fingerprints at crime locations, and at least one identification. However, of the evidence discussed, some of it pertained to the offenses for which the defendant was acquitted.
Finally, Detective Schaubhut testified on cross-examination that the identical factor among the cases was that the perpetrator was a black male between 25 and 28 years old.
In State v. Perkins, 568 So.2d 610, 612 (La.App. 4th Cir.1990), we stated what use may be made of prior arrests:
A court may properly consider prior arrests and police reports in sentencing a defendant. State v. Soco, 508 So.2d 915, 917 (La.App. 4 Cir.1987). However, a trial judge does not have "unbridled authority" to consider prior arrests when the defendant may have been innocent of those charges. State v. Gleason, 533 So.2d 1032, 1033 (La.App. 4 Cir.1988).
The primary factor to be considered is whether there were aggravating factors in the present offense. State v. Willis, 452 So.2d 796, 797 (La.App. 4 Cir.1984). In the instant case, the judge found the aggravating factors in a different case, one in which the defendant had been arrested, but not convicted. A court cannot rely on allegations as to the factual circumstances of other offenses of which a defendant has not been convicted in order to find that the present crime for which the defendant is being sentenced was aggravated or severe.
In Perkins, the trial court referred to other crimes for which the defendant had been charged but not convicted, specifically, a crime against an elderly woman. The victim in the case for which he was being sentenced was not elderly.
However, the Louisiana Supreme Court held that a trial court could consider unadjudicated criminal activity in sentencing. In State v. Washington, 414 So.2d 313 (La.1982), the trial court considered the confession of defendant's co-conspirator as evidence of prior criminal activity. The Supreme Court held that the trial court did not err in doing so:
The sources of information from which a sentencing court may draw are extensive, and traditional rules of evidence are not bars to consideration of otherwise relevant information. State v. Douglas, 389 So.2d 1263 (La.1980). Prior criminal activity is one of the factors under art. 894.1 to be considered by the trial judge in sentencing a defendant. Prior criminal activity is not limited to convictions. State v. Brown, 410 So.2d 1043 (La.1982).
Washington at 315.
In State v. Bouie, 532 So.2d 791, 793 (La. App. 4th Cir.1988), we reiterated that a trial court may consider both arrests and convictions in imposing sentence, provided the defendant "is given notice of the information and is afforded a chance to speak in mitigation."
In the present matter, the trial court made no particular references to the defendant's acts toward any victims except the victim in the instant case. The trial court specifically began his reasons for sentencing by stating "I'm sentencing the defendant today on armed robbery and nothing else." However, the court went on to distinguish between being found not guilty in a trial, which means that the jury is not convinced beyond a reasonable doubt of guilt, and innocence of a crime. The court further stated that he would consider the defendant's "problems" with the law as a tool in making his sentencing decision. As noted above, the court considered the defendant's history of criminal activity, including juvenile matters, and the testimony it had heard at both of the defendant's trials, as well as the testimony regarding the crimes for which the defendant was not tried. The defendant's counsel participated extensively in the sentencing hearing, including cross-examining the witness as to the evidence which purported to link the defendant to other crimes.
The trial court was justified in imposing the maximum sentence. The trial court heard testimony from three victims regarding rapes and robberies. While the jury was not convinced of the defendant's guilt beyond *1336 a reasonable doubt, the trial court clearly was. As long as there was a preponderance of the evidence against the defendant, the trial court could consider these other offenses in sentencing the defendant. Furthermore, as to the victim in this offense, the jury did not acquit the defendant of aggravated rape but rather was unable to reach a verdict. The trial court, having heard the victim's unequivocal testimony that she was raped as well as robbed, could consider this as an aggravating factor in sentencing.

ARGUMENT II
In his second argument, the appellant contends that the trial should not have considered the charges for which he was acquitted because to do so violated double jeopardy. Appellant concedes that generally no double jeopardy violation occurs when a sentencing court considers evidence from a trial which resulted in an acquittal. State v. Rankin, 563 So.2d 420 (La.App. 1st Cir.1990). However, he suggests that in this case double jeopardy was violated because the trial court stated that the acquittals were a grave miscarriage of justice and otherwise made statements about the defendant that indicated the court believed he had committed all the crimes for which he had been charged and tried.
The appellant cites no authority for his contention that the prohibition against double jeopardy has been violated. As discussed infra, a trial court may consider prior arrests and the evidence from trials which result in acquittal provided that there is a preponderance of the evidence to link the defendant to the crimes and the defendant has been given an opportunity to speak in mitigation and has been given notice of the information. The appellant's suggestion that the trial court should be precluded from considering the evidence it heard, merely because the court felt that the acquittals were erroneous, is insupportable. This argument has no merit.

ARGUMENT III
In his third argument, the appellant argues that he had inadequate notice of sentencing and the information presented at the hearing, and thus his right to due process of law was violated.
A review of the record shows that sentencing was originally set for October 5, 1988. On October 5th the sentencing was reset until October 28, 1988. That date was reset upon joint motion of the defense and the state. No new date for sentencing was set; however, the trial for the aggravated rape charge, which had previously resulted in a mistrial, was set for November 28, 1988. On this latter date, the State dismissed the rape charge. The matter was then recalled and the defendant was sentenced after the court took testimony. Nothing in the record indicates that the defendant moved for a continuance or objected in any way to the fact that the sentencing took place at that time.
The defense generally cannot avail itself of an error which was not objected to at the time of occurrence. La.C.Cr.P. art. 841; State v. Arvie, 505 So.2d 44, 47 (La.1987). The Court noted in Arvie that the purpose of this rule is to require counsel to notify the trial judge of an error at a time when the judge may correct the error. Id. Lack of a contemporaneous objection will not always bar review where the error is so fundamental that it strikes at the very essence of the reliability of the fact-finding process. Id. However, when counsel for defendant fails to comply with the contemporaneous objection rule, even in the case of a fundamentally erroneous instruction on the elements of an offense, it is not unreasonable to require defendant to carry the burden of satisfying the court that the failure to object was excusable and was not the result of trial strategy. State v. Mart, 419 So.2d 1216, 1219 (La.1982).
In the instant case, the appellant's counsel participated in the sentencing hearing in a vigorous manner. When the trial court asked if the defendant was ready for sentencing, counsel replied in the affirmative. There is nothing in the transcript to substantiate that the defendant was prejudiced by any alleged lack of notice that the sentencing hearing would be held that date. Furthermore, when the defendant was resentenced on August 10, 1990, a different counsel stated that the defendant was ready for sentencing and made no attempt to present any argument *1337 or counter any evidence which had been presented at the original hearing.
This argument is without merit.

ARGUMENT NUMBER IV
In his fourth argument, the appellant restates much of the first argument, suggesting that the evidence to link the defendant to other crimes was lacking, and thus did not support the requisite showing to support the trial court's opinion that the defendant was a walking crime wave.
The appellant is correct that some of the evidence linking the defendant to other rapes and robberies was in reference to the crimes for which he was tried and acquitted. However, Detective Schaubhut testified that the defendant had been identified in several cases, that his fingerprints had been lifted from one location where a different rape had occurred, and that he had been identified by still another, unrelated victim. Detective Schaubhut described the methodology by which the defendant was linked to twelve or thirteen cases:
We didn't solve all 12 or 13 cases by one particular M.O. Like I say, we didn't have the break in the case until he pawned a particular piece of jewelry and we were able to link him one case at a time. Not all 12 or 13 cases were related, but one might have been related to another one, and in that case there might be a similarity with another case, and he was gradually linked to them all by numerous detectives that handled the cases.
S.Tr. 15
Detective Schaubhut also testified that the defendant was linked to three or four cases within the Faubourg-Marigny area which were related because of the time they occurred, because they were all burglaries and rapes, and because the physical descriptions were similar.
Even if Detective Schaubhut did not provide details of every offense which the defendant was believed to have committed, he did substantiate the defendant's connection with crimes other than those for which the defendant was tried and the reasons why the police believed he was responsible for more. Given the defendant's apparent other criminal history, referred to by the trial court and contained in the rap sheet entered into evidence, the trial court had a sufficient basis to conclude that the defendant had committed other crimes. The court was justified in imposing the maximum sentence on the defendant.

ARGUMENTS V AND VI
The appellant argues that the trial court erroneously instructed the jury on the standard of reasonable doubt. Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The instruction given by the trial court in the instant matter was as follows:
If you entertain a reasonable doubt as to any fact or element necessary to constitute the guilt of the defendant, it is your sworn duty to give him the benefit of that doubt and return the verdict of not guilty. But this doubt must be a reasonable one, that is, one founded upon a real, tangible and substantial basis and not upon a mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your mind by reason of the unsatisfactory character of the evidence.
Supp.Vol., Tr. 202-203.
The erroneous instruction given in Cage was:
If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such a doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. "It is a doubt that a reasonable man can seriously entertain. What is required is *1338 not an absolute or mathematical certainty, but a moral certainty."

State v. Cage, 554 So.2d 39, 41 (La.1989).
The instruction in the instant case is not identical to the instruction given in Cage. However, it is identical to the instruction given in State v. Harrison, 588 So.2d 771 (La.App. 4th Cir.1991) revs'd 609 So.2d 789 (La.1992):
If you entertain a reasonable doubt as to any fact or element necessary to constitute the guilt of the defendant, it is your sworn duty to give him the benefit of that doubt and return a verdict of not guilty.
But this doubt must be a reasonable one, that is, one founded upon a real, tangible and substantial basis and not upon a mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your mind by reason of the unsatisfactory character of the evidence.
Likewise, if the State has proved the guilt of the defendant to your satisfaction beyond a reasonable doubt you should return a verdict of guilty.
In Harrison, the Louisiana Supreme Court held that the instruction constituted error even though it did not contain all of the phrases found in the Cage instruction because in Cage it was "stated that the word `grave' suggested a higher degree of doubt than that required for acquittal under a reasonable doubt standard." State v. Harrison at 789-90. The Court then applied the harmless error test as permitted under Cage and found that the error was not harmless.
Subsequent to State v. Harrison, the United States Supreme Court held that an erroneous Cage instruction on reasonable doubt denies a defendant his right to have a jury find him guilty beyond a reasonable doubt and is a "structural defect in the constitution of the trial mechanism", is not subject to a harmless error analysis, and results in the total lack of a jury verdict within the meaning of the Sixth Amendment. Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). This Court has since held that an instruction such as given in Harrison does not rise to the level of a constitutional defect as defined in Sullivan. State v. Michael Harris, 624 So.2d 443 (La. App. 4th Cir.1993).
Furthermore, the defendant did not object to the erroneous jury instruction in this case. The appellant argues that the contemporaneous objection rule should not apply in light of Sullivan`s determination that no jury verdict exists when the erroneous reasonable doubt instruction has been given.
After briefs were filed in this matter, in light of Sullivan, we reconsidered the requirement that an objection must be made to a Cage charge. See State v. Lionel Berniard, 625 So.2d 217 (La.App. 4th Cir.1993). In Berniard our Court en banc overruled State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991) writ denied, 588 So.2d 1110 (La. 1991) and held that a contemporaneous objection is not required for appellate review of the issue of an erroneous jury instruction on reasonable doubt. However, rehearing was granted in Berniard, on our own motion, and the Dobson rule requiring a contemporaneous objection continues to be the law. Therefore, the appellant cannot raise the issue of the erroneous jury instruction.
Accordingly, for the above reasons, appellant's conviction and sentence are affirmed.
AFFIRMED.